GEORGE W. ROBY LUMBER COMPANY (A CORPORATION)
v. EDGAR L. GRAY.

*Logs and logging—Contract—Pleading—Declaration on written
instrument—Variance—Evidence—Charge to jury.*

1. In declaring upon a written contract the pleader purported to set it forth in full, but omitted the signatures, and on the trial, after proving said signatures, offered the contract in evidence, and objection was made on account of the variance, and it is held that the contract was counted upon and sufficiently proved to admit it in evidence.

2. In a suit to recover for driving logs for the defendant the plaintiff testified that it was agreed that the amount run should be determined by the mill-scale of the logs when sawed, the amount of which he obtained from the book-keeper at the mill, which amount was included in a statement of account sent to the defendant, which was received in evidence without objection. And it is held that such mill-scale was competent and material evidence of the amount of logs run, but was not the only competent evidence which might be given of that amount, and that the testimony was sufficient on this branch of the case to be submitted to the jury.

3. The owner of dams on a stream in which certain log-owners desired to run their logs agreed to furnish water for flooding purposes to enable them to run 3,000,000 feet for a specified sum, and, in case the dams went out before that amount was driven, to refund a proportionate amount, unless he repaired the dams, which he agreed to do. He further agreed that, if said logs exceeded the amount specified, he would furnish the water at an agreed price per thousand feet for the balance to be run. The dams went out *after* the 3,000,000 feet were driven, and the log-owners repaired them, and sued the owner for such repairs, which it is held are not covered by the contract.

4. A charge which substantially makes the jury judges of the law as well as the facts is erroneous.

Error to Mason.    (Judkins, J.)    Argued October 26, 1888.    Decided January 18, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*E. L. Gray,* in *pro. per.*, and *Wing & Samuels* (*D. E. Corbitt,* of counsel), for appellant.

*Wheeler & Bishop,* for plaintiff.

SHERWOOD, C. J. The plaintiff brought suit against the defendant to recover for money which it claims is due from the defendant for driving logs during the years 1883 and 1884.

On June 11, 1883, the parties entered into an agreement in writing, a copy of which is as follows:

" Memorandum of agreement made this 11th day of June, A. D. 1883, between E. L. Gray, of Newaygo, Mich., and the G. W. Roby Lumber Company, of Ludington, and State aforesaid:

" 1. Said Gray is to furnish said company with water from his two dams by means of floods to run out of the ' Middle Branch,' so called, all logs now in said stream, and put therein, or on the banks thereof, by said company during the present season; said floods, in case both dams are used, to be raised to the height as follows: The upper dam five feet, and the lower dam ten feet; said floods to be let off and given at times as requested in writing by the said company or its agent. In case said dams go out, said Gray to pay back a relative proportion of the amount received as the whole consideration paid bears to amount of logs run out compared with the amount remaining in the creek, unless he repairs the dams, which he agrees to do. In case there is more than three million in the creek belonging to said company, then said Gray to furnish water to run them out at the rate of 30 cents per M.

" In consideration of the above agreement, the said party of the second part agrees to furnish, in case they need the floods from both of Gray's dams, two persons, whom said company are to pay, in addition to the consideration paid, as hereinafter stated. Said company agrees to pay down the sum of $500 by draft,—the receipt is hereby acknowledged,—and hereby sell and convey to

said Gray all the pine timber now cut and being, stand-
ing, and lying on the north half of north-west quarter,
and the north-east quarter, of section 27, town 15
north, of range 14 west, with the right of egress and
ingress on and from off said land for the purpose of
removing said timber at any time during a year from this
date; said timber and draft to be in full satisfaction for
the use of floods for both or only one dam, as the said
company may elect; said company to run out Gray's logs
where their dam was located, and the latter to pay a
reasonable price therefor, to be paid when they are sawed.
Said Gray is to furnish water by flood from his said dams,
with which to put afloat and drive out the timber
remaining on section 15, town 17 north, of range 12 west,
at the rate of 30 cents per thousand feet, to be paid as
the work progresses, and said company is to use reason-
able diligence to put all timber in said creek next winter."

It is also claimed by plaintiff that in the fall of 1883 a
contract was made by mail, by which it was agreed that
the plaintiff should have of the defendant $1.25 per
thousand for the logs driven out that fall and the spring
of 1884.   It was also claimed by the plaintiff that the
dams were washed out, and the plaintiff had to repair
them, and did repair them, and charged defendant there-
for.    The plaintiff's entire claim against the defendant,
as its counsel presented it to the jury, was—

1. For running logs in the river when the contract was
made in June, called "old logs," and under the contract,
in 1883, 742,653 feet, $742.65.

2. For running 1,015,000 feet of defendant's logs under
agreement made in October, $1,268.75.

3. For repairs made upon defendant's dams when washed
out, $300.

Under a notice of set-off and plea of recoupment the
defendant filed the following as the items of his claim
against the plaintiff:

"To use dams on Middle Branch from May 1, 1883, to
   December 21, 1883_____ $1,500.00
Board of two men from June 1, 1883, to December 1,
   1883_____     75.00

| | |
|---|---:|
| Board of Jos. Gizans, from October 27 to December 22, 56 days | 28.00 |
| Furnishing dams, etc., for driving logs out of Middle Branch during the year 1884, up to September, 1884, being 8,000,000 feet, at 30 cents per M | 2,400.00 |
| Use of two dams from the 1st day of September, 1884, to December, 1884, at $25 per day | 1,500.00 |
| | $5,503.00 |
| Damages on 23,000 feet of logs left in Middle Branch | 138.00 |
| | $5,641.00" |

The case was tried in the Mason circuit by jury, and the plaintiff obtained a verdict for $472.69. Defendant brings error.

The record is very large, the bill of exceptions containing all the testimony in the case.

On November 15, 1884, the plaintiff forwarded to the defendant a statement of the account, as it claimed it, between the parties, showing a balance due from the defendant of $720.35.

The contract of June 11 was counted upon, and sufficiently proved to admit it in evidence.[1]

Defendant claims that the balance stated by the plaintiff to him was reached by allowing to the plaintiff in the statement the sum of $742.65 for driving 742,653 feet out of the Middle Branch into the Pere Marquette river to the Pere Marquette Boom Company's drive, in 1883. The defendant insists there is no evidence in the case that the plaintiff ever performed that service. If this is true, but little more need be said to dispose of the case. The testimony of Mr. Roby was to the effect that he was the president of the company, and made the contract in behalf of the company, and after the contract was completed he agreed with the defendant that the scale of the logs driven out of the Middle Branch for him by the

---

[1] The declaration purported to set forth the contract, but the *signatures* were omitted, and the objection was based upon this variance.

plaintiff should be taken at Cartier's mill, and after they were sawed the plaintiff could get the scale at the mill, and defendant would pay for driving, according to that scale, a reasonable price, and that plaintiff charged a dollar per thousand for driving. The plaintiff's statement of the account sent to the defendant on November 15, 1884, and hereinbefore referred to, was also offered in evidence by counsel for plaintiff without objection. This contained the item for driving the logs that were in the stream in 1883, amounting to $742.65, and it was this item that the witness testified he obtained at Cartier's mill, and that the amount of the scale was obtained from the book-keeper at the mill. This witness also testified that the plaintiff drove the defendant's logs in 1883 with its own logs.

Defendant further insists that plaintiff never drove any logs for him, except the 1,015,000 feet at $1.25 per M., and that, with the proper deductions made, the statement would show a balance due defendant of $22.30, without giving defendant anything under his plea of recoupment.

Under the provisions of the contract, the payment for driving out defendant's logs from the Middle Branch by plaintiff was to be a reasonable price when they were sawed. These were the 742,653 feet which are charged for in the plaintiff's account at one dollar per thousand; and defendant insists, further, that there is no proof in the case that any of the logs, if driven out of said stream, were ever sawed; that the parties had agreed upon what the evidence should be of the driving and the amount of logs run for the defendant, and that was the mill-scale when the logs were sawed. This would be competent and material evidence of the amount, especially made so by the parties. It was not, however, the only competent testimony which might be given of that amount, and we

think the testimony was sufficient upon this branch of the plaintiff's case to be submitted to the jury.

By the terms of the agreement the defendant was to furnish water to enable the plaintiff to run out of the Middle Branch 3,000,000 feet of logs. This the defendant could only do by the use of dams, of which he had two. For the use of the dams and water the defendant was to be paid a certain sum. If the dams went out (as they were liable to by freshets or otherwise) before the amount of logs agreed upon was run out, then the defendant was to refund a proportionate amount paid for the use thereof. The dams, however, lasted, with some repairs made, for the payment of which the defendant does not object, until the 3,000,000 feet were run out; but soon thereafter the dams went out, and defendant claims the plaintiff went on, without any direction from the defendant, and made repairs thereto, to the value, as plaintiff now claims, of $300, and seeks to recover the same in this suit against defendant. It is the contention of the defendant that the repairs which plaintiff made to the dams, for which this $300 is charged, the defendant was under no obligation to make, neither did he ever direct or assent to the plaintiff's making them for him, and there is no liability upon his part to pay for the same.

It is difficult to see why the position of the defendant in regard to this charge of $300 for repairs upon the dam is not correct. It is not pretended there was any special agreement between the parties by which the defendant agreed to pay for this work, and I can see no chance or ground for implying one. Under the contract between the parties, if there were not more than 3,000,000 feet to be run out of the Middle Branch, and the dam went out before the drive was completed, it was provided that defendant should make a rebate from the moneys paid

by plaintiff, in case of failure to repair. This suit upon this branch is not to recover the rebate provided for in the contract, but to recover for work and labor of plaintiff in making repairs upon the dam, which was not a part of the agreement of defendant. If there was more than 3,000,000 feet to be run out by the company, then defendant was to have 30 cents per thousand feet for furnishing the water to drive the excess. It is not for any breach of his agreement to furnish water to drive any portion of this excess that this suit is brought, but for the labor in fixing the dam, and driving the old logs in the branch at the time the contract was made.

When the court charged the jury that if the plaintiff drove the defendant's logs out of the Middle Branch within a reasonable time, "and this dam washed out without their fault, and they made the repairs in good faith, they will be entitled to recover the entire charge against Mr. Gray," it went too far. The provisions of the contract would not warrant such a construction, for the reasons stated, and it was error. The following charge contains a similar fault:

"Taking the plaintiff's theory of it, and my statement of one side of it, if they have driven the logs, and made the repairs, they would recover that amount as a matter of course."

If the defendant was not obligated to make the repairs, and did not request them to be made, he certainly was not bound to pay for them, and his liability was not a matter of course under the contract, and no affirmative defense was necessary.

In several respects we think the charge was too general, so much so as to mislead the jury to the prejudice of the defendant in several of the parts complained of. In stating the reasonable time within which the logs were to be driven in order to constitute a compliance with the

contract, the jury might take into consideration "*every-thing*" bearing upon the question. And again, he said to the jury, when about to close his charge:

"You know more or less about this class of litigation, —about lumber business and logging contracts, and the way this business is carried on. Use your own common sense, and do what is right between these two parties. This is all I care to say to you, besides these requests to charge."

This substantially makes the jury judge of the law as well as the facts, whereas they are required to take the law from the court. We think the errors pointed out sufficient for the disposition which must be made of the case, as presented to us, and we see no occasion for further examination of the numerous exceptions which we find in the record. We may perhaps with propriety say, were the only claim made by plaintiff in the case the driving of the 742,653 feet of defendant's logs (being the 'old logs,' so called), it might be regarded as very doubtful whether or not the case should have been allowed to go to the jury, as the evidence stands in this record.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.