FRANK D. HYDE AND GEORGE S. HYDE v. ALONZO M. SHANK.

*Chattel mortgage—Attachment of property in defiance of—Replevin by mortgagee—Good faith of parties to mortgage material—Evidence—Mortgage to secure future advances—Charge to jury.*

1. Upon the trial of issues involving fraud, a pretty large latitude of inquiry is permitted; and all facts and circumstances tending to throw light upon the transaction between the parties alleged to have been implicated are allowed to be given in evidence.

    So *held*, where a mortgagor conveyed to the mortgagee, after an attachment of the mortgaged property by his creditor, and its replevin by the mortgagee, his interest in 480 acres of land which he held under a contract of purchase, and was credited in account with the amount he had paid on the contract and for taxes, after which the mortgagee paid the balance of the contract price and secured the title contracted for, and it was claimed on the trial of the replevin suit that the value of the land was largely in excess of the sum paid, and the amount credited by the mortgagee in reduction of the indebtedness secured by the mortgage, in support of which claim defendant was allowed to prove what the mortgagor claimed the land was worth, and its actual value, which are held proper subjects of inquiry as affecting the question of the intent of the parties.

2. A provision in a chattel mortgage allowing the mortgagor to retain possession until the debt is due is for his benefit, and may be waived by him at any time. *Ganong v. Green*, 71 Mich. 1.

3. The waiver by a mortgagor of his right to the possession of the property until the maturity of the mortgage debt, and his consent that the mortgagee may take immediate possession, cannot affect the rights of an attaching creditor, who, if he regards the mortgage as valid, should levy subject to the rights of the mortgagee, and if he claims it void as to creditors, and succeeds in showing such fact, the agreement as to possession will not affect that question.

4. A mortgage given in good faith to secure future advances agreed to be made by the mortgagee, as well as present indebtedness, is valid.

5. An instruction to a jury in a case involving questions of law and fact that there is no law involved in the case that amounts to any thing is erroneous.

6. An instruction that the jury should find which side is in the right is too general, as it allows them to enter the domain of morals, and measure the liability of the parties by the individual notions of the jurors as to whether the conduct of the parties was right or wrong.

7. An instruction which leaves the jury judges of the law as well as of the facts, and allows them to render a verdict based upon their abstract notions of what is right between man and man, is erroneous. *Lumber Co. v. Gray,* 73 Mich. 356.

Error to Osceola. (Judkins, J.) Submitted on briefs October 11, 1889. Decided November 8, 1889.

Replevin. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*George S. Steere,* for appellants, contended:

1. In cases of fraud great latitude is allowed in the introduction of evidence, and no definite or fixed rule can be laid down, as to do so would, in many cases, be laying down rules for the guidance of parties about to perpetrate frauds; much must be left to the discretion of the trial judge; citing *Jacobson v. Metzger,* 35 Mich. 103; *Gutsch v. Pittsley,* 51 Id. 566; *Ross v. Miner,* 67 Id. 410.

2. This mortgage was claimed to be fraudulent, and all that was said or done between the parties at and before the time of the agreement was competent; citing *Angell v. Pickard,* 61 Mich. 561, 570; and, as to the general history of the transaction, subsequent as well as previous, see *Ross v. Miner,* 64 Mich. 204.

3. It is not easy to draw the precise line separating those circumstances which are fairly admissible from those which ought to be excluded. The true test is whether the fact can throw light upon the transaction, or is altogether irrelevant; citing *Zerbe v. Miller*, 16 Penn. St. 488; *Heath v. Page*, 63 Id. 208; *Blue v. Pennington*, 27 Mo. 272; *Wright v. Linn*, 16 Tex. 34; *Cooke v. Cooke*, 43 Md. 522; Bump, Fraud. Conv. 579.

4. In so far as the value of Edgett's interest in the land in question was material, the value at the time the mortgage was given was the true inquiry, and not at some subsequent time; citing *Oppenheimer v. Halff*, 68 Tex. 409.

5. A charge that has no testimony to support the theory upon which it is based is erroneous; citing *Dodge v. Brown*, 22 Mich. 446, 453; *Leslie v. Smith*, 32 Id. 64-67; *Hunt v. Strew*, 33 Id. 85, 91; *Byles v. Golden Tp.*, 52 Id. 612; *Folkerts v. Standish*, 55 Id. 463; *Hudnut v. Gardner*, 59 Id. 341; *Hewitt v. Railroad Co.*, 67 Id. 61.

6 Where creditors attach mortgaged property, in defiance of the mortgage, evidence that it was a *bona fide* security for actual indebtedness at the time of the attachment, will entitle the mortgagee to recover in replevin for the property; citing *Norris v. McCanna*, 29 Fed. Rep. 757; and, to the effect that such an attachment is a conversion as against the mortgagee, see *Rand v. Barrett*, 66 Iowa, 731; and no demand is required before bringing replevin for the property; citing *Adams v. Wood*, 51 Mich. 411.

7. In trover by a mortgagee against judgment creditors who have sold the property on execution, evidence is admissible of an arrangement between the plaintiff and the mortgagor, made after such levy, giving plaintiff the right to immediate possession; citing *Ganong v. Green*, 71 Mich. 1.

8. A mortgage is not fraudulent for including contemplated advances, and a charge to this effect should have been squarely submitted to the jury; citing *Newkirk v. Newkirk*, 56 Mich. 525.

*N. O. Griswold*, for defendant, contended:

1. Evidence of the value of the land, and of the claim of Edgett as to its value, was admissible; citing *Stone v. Covell*, 29 Mich. 359.

2. No exceptions were taken, and error is assigned under Act No. 101, Laws of 1885, in which case rule 12 requiring assignments of error to be specific should be strictly adhered to. In this case we have no exception or reason given by counsel for his objection, or to explain his position; citing *Baylis v. Stout*, 49 Mich. 217.

CHAMPLIN, J.   Alonzo M. Shank, as sheriff of Osceola county, seized certain chattels by virtue of a writ of attachment sued out of the circuit court of that county in favor of Daniel M. Gardner, against the goods, chattels, lands, and tenements of John R. Edgett. The writ was tested on February 4, 1887, and was served on the 11th of that month.

On November 3, 1886, John R. Edgett executed a mortgage to Frank D. and George S. Hyde, under the name of "Hyde Bros.;" which was duly filed on November 6, 1886. The mortgage recited that Edgett was justly indebted to Hyde Bros. in the sum of $2,000, and that he expected to receive other and additional moneys, notes, and indorsements from them, from time to time, during the continuance of the mortgage; and, as the indebtedness of Edgett to them was liable to change in amount and time of payment, and as he had agreed that the payment of the existing indebtedness of Edgett to Hyde Bros., and also the payment of other indebtedness for moneys, notes, and indorsements to be furnished and given to Edgett by them should be secured, therefore the party of the first part agreed to pay the parties of the second part the sum of $2,000, on or before one year from the date thereof, with interest at 10 per cent., payable annually, until paid; and that Edgett would pay to them such bills, notes, advances, and indemnify from such indorsements, as should be made, at such time and times as they should thereafter be due, with interest at the rate of 10 per cent., payable annually, until paid. And, in pursuance of such agreement, the said party of the first part granted and sold to the party of the second part certain goods and chattels particularly described in said chattel mortgage. The mortgage was so written as to cover after-acquired property.

It was conditioned that Edgett should pay the sum of

$2,000 at the time and manner therein set forth, and the interest, and also pay, or cause to be paid, all bills, notes, and accounts thereafter made by Edgett to Hyde Bros., and indemnify them for all indorsements and accommodation paper furnished by them to him during the continuance of the agreement, as the same became due, respectively. The mortgage contained a clause relative to insurance; and it was expressly agreed that, should Edgett neglect to insure, or should he make default in the payment of any of said bills, notes, indorsements, accounts, or indebtedness on any day whereon the same became due and payable, and remain unpaid and in arrear for the period of 30 days, then and from thenceforth, in any one of such events, the entire amount secured by the mortgage should, at the option of Hyde Bros., be due and payable immediately thereafter.

It was further agreed by the terms of the mortgage that in case default was made in the payment of the said several sums of money or interest, or any part thereof, at the time the same should become due, or in case the whole amount should be declared due by reason of any default therein contained, or in case of sale, etc., by Edgett without written consent, in either event, Hyde Bros. were licensed and authorized to take possession and sell at private sale or public auction.

Edgett at the time was engaged in the manufacture of shingles, and Hyde Bros. were purchasers of the cut of the mill, under certain contracts under which they claim to have made advances. The mortgage covered the entire plant for manufacturing shingles, including boiler, engine, shingle-machines, shaftings, horses, oxen, trucks, etc. A further proviso was contained in the mortgage, as follows:

"Provided, always, that in default in, or the violation of, one or more of the covenants or agreements herein

contained, the said party of the first part, his executors, administrators, or assigns, may possess, use, and enjoy, in the usual and regular manner appertaining to such mill business, without any disturbance or interference by the said parties of the second part, their executors, administrators, or assigns, all the goods, chattels, and personal property in this indenture mentioned, including all which may be added, after-acquired, or substituted; and it is further agreed that, in case of any auction sale by reason of the power of sale contained in this indenture, the said parties of the second part, their executors, administrators, or assigns, shall have full power and authority, and be at liberty, to bid on and buy in for themselves the whole, or any part, of the property so offered for sale, the same as any other bidder might do."

Gardner claimed that the mortgage was absolutely void as to the creditors of Edgett, and levied his attachment upon that theory. After the attachment was levied, Hyde Bros. and Edgett looked over their accounts, and had, at least, a partial settlement, and found a balance due from Edgett to Hyde Bros., and it was then agreed that Hyde Bros. might treat the whole amount as due under the mortgage; and they claim that the whole debt, on or about February 1, 1887, was about $1,200.

Upon the trial of issues involving fraud, a pretty large latitude of inquiry is permitted; and all facts and circumstances tending to throw light upon the transaction between the parties alleged to have been implicated are allowed to be given in evidence. We do not think the court erred in permitting the testimony to be introduced upon which error is assigned. What Edgett claimed the property was worth which he transferred to Hyde Bros., and its actual value, were proper subjects of inquiry, as affecting the question of the intent of the parties.

The remaining assignments of error are directed to the charge of the court. The fifth and sixth assignments are considered together in the brief of plaintiffs' counsel.

We see no error in this part of the charge, and it is unnecessary to repeat it.

The seventh assignment is as follows:

"The court erred in instructing the jury in said case as follows: 'Now, in regard to this question of fraud, gentlemen, the mere fact that the mortgage upon its face was taken for more than there was due is not conclusive proof of fraud; it is a mere circumstance tending in that direction, for what it is worth. If a man gives a mortgage for a little more than there is due, it is very unimportant, as a general rule, but, if he gives the same for a large amount more than there is due, it is a badge of fraud, as the authorities say; and it is a circumstance tending to show that it was not given in good faith, but it is not conclusive.'"

It is urged, in support of this assignment of error, that the court should have charged that the mortgage would not be fraudulent for contemplating future advances. But the learned judge covered this objection in the following portion of his charge, namely:

"If you find it to be true; if that mortgage was given in good faith, to secure an honest indebtedness at the time,—it would secure it as between all the parties to this contention, and it would also secure them in subsequent indorsements, bills, notes, and advances made by them for the benefit of Edgett coming within the contemplation of the paper; and if, 30 days before this suit was commenced, they had made notes, bills, and advances, and they were due and payable, and not paid 30 days before the suit was commenced in this case, the plaintiffs are entitled to recover."

And, again, he instructed them at the very close of the paragraph excepted to that the fact was open to explanation at the hands of the party claiming under it; and—

"You have heard the explanation of the parties; and, if you believe that the plaintiffs' theory is true; that the mortgage was given in good faith, to secure a present indebtedness, and to secure this further indebtedness, and

the future indebtedness, if there was any, became due 30 days before this suit was commenced,—then the plaintiffs are entitled to recover at your hands; otherwise, not."

And he further charged them, as requested by the plaintiffs' counsel, as follows:

"There has been something said to the effect that this mortgage was fraudulent. Now, gentlemen, while it is a badge of fraud to give a mortgage for more than is due, a mortgage is not fraudulent for including future advances."

The court, in the instruction given to the jury, ignored the testimony introduced by the plaintiffs tending to prove that before the writ of replevin was issued it was agreed between the plaintiffs and Edgett, the mortgagor, that they might take immediate possession of the chattels covered by the mortgage. On the contrary, he charged the jury that the plaintiffs could not recover unless some, at least, of the indebtedness secured by it had become due 30 days before the replevin suit was commenced. This was error. The point was directly ruled upon in *Ganong v. Green*, 71 Mich. 1 (38 N. W. Rep. 661). The provision in the mortgage as to the mortgagor's retaining possession was for the benefit of the mortgagor, and it was competent for him to waive it at any time. Such waiver did not in any manner affect the attaching creditor's rights; for, if he regarded the mortgage as valid, he should have levied subject to the rights of the mortgagee, which were to have the mortgaged property subjected to the payment of the amount due him, and, if he regarded it as void, such waiver would not have affected his rights; for, if he should succeed in showing that the mortgage was void in its inception, the agreement as to possession would not affect that question.

Exception, however, is taken to the concluding portion of the charge, which was as follows:

"The whole sum and substance of all that talk is this: If that mortgage was made in good faith, and was due, by its terms, when these parties took possession of it from the sheriff, they have the right to recover at your hands; and otherwise, not.    And the burden upon them is to show that it was due and operative in such a sense as would justify them in taking it from the sheriff upon the ground that it gave them the right to the property. That is all there is to the case.    There is no law involved in this case that amounts to anything.    It is simply a question of fact; and it will be for you to say, under your oaths, which side is in the right.    Look it all over carefully and honestly; and, if you believe this mortgage was all right, and was due, find for these plaintiffs six cents damages.    If you are satisfied that it was not due, or was fraudulent, or was satisfied, find for the defendant six cents damages.    Take into consideration all the dealings of these parties; all the evidence one way and another; the arguments of counsel, and everything in the case—and do what is right between man and man.    That is all that I care to say to you."

We think that the instruction to the jury that there was no law involved in the case that amounted to anything was erroneous.    The court had given five instructions as to the law of the case, asked for by plaintiffs' counsel, in the very words of the requests, besides his own instructions previously given; and the questions in dispute involved both law and facts; and the law should not, in effect, have been withdrawn from the jury.

The instruction that the jury should find which side is in the right was too general.    It allowed the jury to enter the domain of morals, and measure the liabilities of the parties by the individual notions of the jurors as to whether the conduct of the parties was right or wrong. The instruction also repeated the error above mentioned, relative to the account or paper being due, by the terms of the instrument, 30 days before the commencement of suit.

The concluding portion of the charge was especially

·objectionable. It called particular ·attention of the jury to a consideration of the dealing of the parties, the arguments of counsel, and everything in the case; and then to do what is right between man and man. Here the court fails to call attention of the jury to the law of the case, but leaves them to consider the arguments of counsel; whereas the jury should have been instructed to confine their consideration to the testimony introduced in the case, and ascertain what facts are proved; and to apply the law, as given by the court, to such facts, and to find a verdict in accordance therewith. As the instruction was given, it left the jury to be judges of the law as well as facts, and to render a verdict upon their abstract notions of what is right between man and man. This we have said was error, in the case of *Roby Lumber Co. v. Gray*, 73 Mich. 356 (41 N. W. Rep. 420).

The judgment must be reversed, and a new trial granted.

The other Justices concurred.