PIERSON *v.* SMITH.

1. CONTRACTS — BUILDING CONTRACT — EVIDENCE — SUBMISSION OF UNCONTROVERTED QUESTION TO JURY.
   In an action for a claimed balance due on a contract for the construction of a barn, where the testimony of both parties shows that it was agreed that the proposed barn should be a duplicate, except as to proportions, of one built in the neighborhood, the trial court was in error in submitting to the jury the question as to whether such agreement was made.

2. TRIAL—INSTRUCTIONS—ASSUMPTION CONTRARY TO TESTIMONY.
   Where there was testimony that plaintiff never substantially completed the building, it was error for the trial court, in his instructions to the jury, to assume that the plaintiff had substantially complied with the terms of his contract.

3. DAMAGES—QUANTUM MERUIT—BREACH OF CONTRACT.
   In an action on the *quantum meruit* for the construction of a barn which was never completed according to contract, the measure of damages is the reasonable value of the building, of which defendant took possession, not exceeding the contract price, less the reasonable cost of completing the building according to contract.

4. TRIAL—INSTRUCTIONS—DUTY OF TRIAL JUDGE.
   It is the duty of the court to instruct the jury correctly upon pertinent matters of law, even when not requested so to do.

5. SAME—ABSTRACT QUESTIONS—INSTRUCTIONS.
   An instruction by the court which invites the jury to formulate their verdict from abstract notions of what is right between man and man is objectionable.

Error to Ionia; Davis (Frank D. M.), J. Submitted June 11, 1920. (Docket No. 61.) Decided July 20, 1920.

Assumpsit by Rolland L. Pierson against Leroy

Smith on a building contract. Judgment for plaintiff. Defendant brings error. Reversed.

*Hawley & Eldred,* for appellant.

*Watt & Colwell,* for appellee.

The parties to this action entered into the following contract:

"Memorandum of an agreement, made and entered into this tenth day of January, 1916, between R. L. Pierson, of Ionia, Michigan, party of the first part, and Leroy Smith of the same place, party of the second part.

"Witnesseth, that said R. L. Pierson agrees to build a barn for said Leroy Smith, as follows:

"That said R. L. Pierson, party of the first part shall build, construct, finish and complete the said barn according to the plans and specifications in a satisfactory manner and ready for use.

"And the said Leroy Smith, party of the second part, agrees to do all teamwork necessary in the constructing of the said barn and agrees to furnish all water necessary in the cement work.

"And the said Leroy Smith, party of the second part, further agrees to furnish certain lumber described as follows: such lumber as is now contained in old barn and shed now on the ground and also to furnish some timber now standing in the woods.

"And the said Leroy Smith, party of the second part, agrees to pay or cause to be paid unto the said R. L. Pierson, party of the first part, the sum of three thousand ($3,000) dollars, in consideration of said barn being so built, erected and finished as hereinbefore stated, payments to be made as follows:

"That the said Leroy Smith, party of the second part, agrees to pay unto the said R. L. Pierson, party of the first part, from time to time such sums as shall not exceed seventy-five (75) per cent. of the actual cost of materials and labor at that time expended by the said R. L. Pierson in the constructing, erecting and finishing of the said barn.

"In witness whereof, said parties have hereunto set their hands and seals this tenth day of January, 1916.

"R. L. PIERSON  (Seal)
"LEROY SMITH  (Seal)"

It will be noted that the contract is silent as to the time within which it should be performed. There is, however, evidence in the record which indicates that the parties were in substantial agreement upon that point and that the barn was to be completed and ready to receive the hay harvested in the summer of 1916. The contract provides that the party of the first part should "finish and complete said barn according to the *plans and specifications* in a satisfactory manner and ready for use." It is agreed that no plans and specifications were at any time furnished by the party of the first part. It is, however, claimed by defendant and admitted by plaintiff that the barn contracted for was to be a duplicate of a barn near defendant's farm, owned by one Charles Chamberlain, except as to proportions.

The plaintiff entered upon the performance of the contract early in the month of April, but the job was not completed until some time in July. Indeed, according to the evidence offered on behalf of the defendant, it was never substantially completed by plaintiff.

The contract is silent as to the construction of a silo. A silo was attached to the Chamberlain barn and one was built attached to the barn in question in the case at bar. It was the contention of the plaintiff that the cost of such construction was to be considered as an 'extra,' while the defendant claims that the cost thereof was included in the contract price of $3,000.

Growing out of this dispute, there was a difference as to the amount of money paid by defendant and received by plaintiff, defendant claiming to have paid $2,703.51, and plaintiff admitting the receipt of $2,-

456, the difference being the sum paid by defendant for material for the silo.

It was the claim of the defendant that the plaintiff had not substantially performed the contract in many details, among them the following:

(1) The basement walls of the barn including wing walls, side walls and silo walls were constructed with mortar in which too little cement was used and said walls are already cracked and are rotten and cracking and falling to pieces.

(2) The posts in the basement were not set, placed and erected in a good and workmanlike manner and many of them are too short and are of no sufficient and adequate support to said building.

(3) Many of the sills and cross-sills in the basement are rotten and are defective and should not have been used.

(4) The stanchions in the steer barn were not cemented in as required by contract.

(5) The box stalls in said barn are constructed of the poorest cull lumber for material and are not built in a good and workmanlike manner.

(6) The plaintiff failed and refused to put in a grain spout and box into the basement as required by contract.

(7) No braces or posts in the straw barn as required by contract.

(8) No straw chute from the straw barn to the basement, as required by contract.

(9) No double board or plank on the floor of the straw barn, as required by contract.

(10) Failure to construct cement floors in the basement as required by contract, with proper and' sufficient gutters and drainage for said floors.

(11) Failure to construct the frame work of said barn in a good and workmanlike manner, in that the pin holes in the posts in the said framework were bored too near and close to the edge of said posts, causing many of them to split out, the building to spread, and the roofs thereof to sag.'

(12) Cutting the plate on the south side too short, and not fastening it to the framework.

(13) Failure to put in ladders at each end of the barn to the peak thereof.

(14) Failure to construct ladders from the barn floor to the mows, as required by contract.

(15) Failure to properly construct the supply tank at said barn.

(16) Failure to paint said barn or any part thereof.

These constituted the principal defects alleged by the defendant, but there are others not enumerated.

It was plaintiff's claim that the building was completed in a good and workmanlike manner and that such defects as appeared were due to the fact that defendant made use of the structure before it was ready. Plaintiff claimed a balance due of $973, while the defendant, by way of set-off and recoupment, claimed that there was due him the sum of $179. The jury to whom the case was submitted awarded plaintiff a verdict in the sum of $733.41.

A motion for a new trial was made, based solely upon the alleged errors in instructions of the court to the jury. A year later, and before the first motion was denied, a second motion for a new trial was filed, based upon the further grounds that, since the filing of the first motion, very serious defects had developed in the building—such defects as to render the building "absolutely worthless and valueless unless large expense is incurred in remedying the same and which will involve the demolition of said structures or material portions of the same in order to so remedy such defects." These motions were both denied.

The case is now reviewed in this court under some 17 assignments of error, the first 11 of which are directed to certain portions of the charge as given, and the last 6 of which are based upon the denial of a new trial and the reasons therefor given by the learned circuit judge.

BROOKE, J. (*after stating the facts*). In instructing the jury, the learned circuit judge said:

"So the first thing for you to determine, gentlemen, in this case is, What was the contract? Were all of the details, in a general way, understood by the parties? What did their minds meet upon? Was it to be a barn without reference to any details, without reference to any other barn as is claimed by the plaintiff in this case, or was it to be a barn built with a silo similar to Mr. Chamberlain's barn, varying in its width, length and proportion?"

It is the claim of the defendant with reference to this instruction that the parties were in substantial accord upon this point and that the barn to be constructed by plaintiff for defendant was to be similar to the Chamberlain barn, varying only in proportion. We are satisfied that this contention is correct and that the agreement between the parties as to the character of the structure to be erected took the place of the "plans and specifications" mentioned in the contract, but never prepared. The question, therefore, as to whether such agreement was made between the parties should not have been submitted to the jury. We reach this conclusion largely upon the testimony of the plaintiff, who testified:

"*A.* The first talk we ever had I think the first day I was over there, we drove to see a barn built the year before for Chas. Chamberlain. The first thing he said to me about a barn was he wanted me to duplicate that barn as near as I could; that he was satisfied with that job, didn't expect to get anything better."

Many other expressions of the plaintiff scattered through the record indicate that the minds of the parties met upon this basic question.

Upon the measure of damages, the court instructed the jury as follows:

"If you find that the defendant is correct in his theory he was to pay for the team work and that is to be deducted from the amount you find otherwise to be due from $3,000 yet unpaid. There seems to be a

difference between the two parties of some $300, one claiming $2,703.51, and the other $2,456; that it comes about from figuring on this silo. So it is a matter for you to take into consideration when you find the amount that was yet unpaid upon the contract price of $3,000, then you will, if you find in favor of the defendant, as to his theory, you should deduct from that amount what you find it would be worth to put the barn back, or what he has expended in trying to put the barn in such shape it was contemplated it should be.

"On the theory of the defendant in this case, he claims that the barn has not been completed and asks the court to charge the jury that the plaintiff cannot recover in this case. I take another view of it. I think when he took possession of the barn he took it upon himself to go to work and repair as he did. It was his duty to minimize the damages as much as possible, make them as light as possible, if he had reason to believe that the barn could be put in shape to use it, he had a right to do it.

"It was contemplated, beyond dispute, in this case, by both parties that the barn would be in shape for haying time. If it was in condition and in such shape it was safe to use, he had a right to use it. If it was not in a safe shape to hold crops contemplated it should hold, then the other party should be held responsible in such damages as defendant has suffered by reason of its not being up to what the law requires a man should do, or what the parties had agreed upon should be done. The jury has no right to make a contract different from what the parties have made. It is your duty to ascertain what the contract and arrangements were. Consider all of the evidence and arrive at what you believe to be a reasonable conclusion as to what arrangements the parties made. If they don't meet upon a certain proposition, then the law says what the duty of each is.

"It is the duty of the plaintiff to build in a workmanlike manner the barn, and within a reasonable time in view of all that had been talked of and in view of what was desired by the defendant and what the plaintiff understood he wanted, and unless interrupted or deterred from carrying that out within that time

by something beyond his control he would have no excuse or reason to offer for not having complied with it; if he thereby left the building in such shape it became injured or weakened because of the use on the part of the defendant, then he must make it good to the defendant.

"So you have the right and it is your duty to inquire into the reasons of its being deferred; whether consented to on the part of the defendant; did the plaintiff exert himself, use his best endeavors to fulfill the contract that the law required he should fulfill within a reasonable time if they don't agree upon it, which the law required him to fulfill but if they did agree upon it, that it was to be done before haying, he should have done it.

"If he left it in that condition, it became weakened by loading hay into the barn, it becomes his duty to make it good, any defects that might exist. He was in law bound to do a workmanlike job and if he has failed to do it and put the other man to any expense or damage by reason of his not doing it, that should be deducted, whatever that damage is you find to be, should be deducted from what otherwise might be due to him upon the contract."

It is strongly urged on the part of the defendant that in this instruction the court was in error in that it is assumed that the plaintiff had *substantially* complied with the terms of his contract and that the building, if completed according to the contract, would have been worth no more than $3,000. And it is asserted that the question of substantial performance should have been submitted to the jury as a question of fact, and that the measure of damages should have been placed before them upon the theory that the defendant was entitled to the building he had contracted for, even if such building would be worth, when completed according to the contract, much more than the contract price. The record contains testimony introduced on the part of the plaintiff that the barn could not be constructed for $3,000, but would cost about $3,800. We are constrained to agree with the contention of the

defendant upon this point. In the case of *Eaton* v. *Gladwell,* 121 Mich. 444, the rule of damages in a case similar to the one at bar is laid down as follows:

"The true rule to be applied in a case like the present, where it appears that, at the time the defendant took possession, the building could not be made to comply with the contract without its entire demolition, and was of less value than the one contracted for, is the value of the building as so completed, not exceeding the contract price, less the damages sustained by the defendant by reason of plaintiffs' failure to perform their contract. These damages consist of: (1) The rental value during the time the completion was unnecessarily delayed. (2) The difference between the value of the building actually tendered and that contracted to be built, less the difference between the agreed price of such contracted building and the reasonable value of that which was built; or, in other words, the damages are the difference between the house contracted for, if worth more than the price agreed to be paid, and such price. This would give the defendant the benefit of his contract."

A similar question arose in *Germain* v. *School District,* 158 Mich. 214, where it was said, in commenting upon an instruction substantially the same as the one given in this case:

"The vice of this instruction is that it assumes that all the plaintiff was bound to do was to furnish a building worth the contract price, whereas he was bound to furnish a building according to the plans and specifications, even though it were worth many hundreds of dollars more than the contract price. Where a contract is nonapportionable, as this one is, and the plaintiff does not complete, as this plaintiff did not, his recovery must be upon the *quantum meruit.* His measure of damages would be the reasonable value of the building as defendant took possession of it, not exceeding the contract price and the value of the extras, less what it would reasonably cost to complete it and make it comply with the contract and specifications."

See, also, *Snider* v. *Building Co.*, 139 Minn. 413 (167 N. W. 108), where the question here involved is fully discussed.

Upon this point, it is urged by the plaintiff that no requests (except a request for direction of a verdict in his behalf) were presented by defendant. This is true; yet it is, nevertheless, the duty of the court to instruct the jury correctly upon pertinent matters of law, even when not requested so to do. *Jageriskey* v. *Railway*, 163 Mich. 631.

Particular emphasis is placed by appellant upon the following alleged erroneous instruction:

"The most that I can say to you now in this case is take it under your consideration. It has taken some time to put in all of this testimony, but take it under your consideration and render such a verdict as you believe will be fair between these parties, one that will accord, in your judgment with the evidence in the case.

"In the first place, it is the duty of the plaintiff to satisfy you by a preponderance of evidence that his claim is a just one, a true one, that his claim is honest and based upon the evidence in the case. If you are satisfied by a preponderance of evidence that his claim is of that character then you can render a verdict in his favor. If the evidence is equally balanced upon that proposition, then he is not entitled to recover, but if it in the slightest degree outweighs the testimony produced by the defendant, he should recover such sum as you find to be his due."

And it is said that by the use of this language the court invited the jury to formulate their verdict from abstract notions of what is right between man and man. We are of the opinion that the quoted paragraph is objectionable under our decisions. *Roby Lumber Co.* v. *Gray*, 73 Mich. 356; *Hyde* v. *Shank*, 77 Mich. 517.

Other errors are assigned upon portions of the

charge and upon the denial of the motion for a new trial. They require no consideration.

The judgment is reversed, with costs of both courts, and a new trial is awarded.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.